STATE of Missouri, Respondent,

v.

Robert Earl WATSON, Appellant.

No. 51396.

Supreme Court of Missouri,
Division No. 1.

Feb. 14, 1966.

Motion for Rehearing or for Transfer to
Court En Banc Denied March 14, 1966.

Norman H. Anderson, Atty. Gen., Jefferson City, Claude W. McElwee, Jr., Sp. Ass't. Atty. Gen., St. Louis, for respondent.

Robert G. Duncan, Pierce, Duncan, Beitling & Shute, Kansas City, for appellant.

DONNELLY, Judge.

Appellant, Robert Earl Watson, was convicted of first-degree robbery under § 560.-120 RSMo 1959, V.A.M.S., by a jury in the Circuit Court of Jackson County, Missouri, at Kansas City, and his punishment under the provisions of the Habitual Criminal Act, § 556.280 RSMo 1959 (as amended Laws 1959, S.B.No.117), was assessed at imprisonment in the custody of the Department of Corrections for a term of ten years. Following rendition of judgment and imposition of sentence, an appeal was perfected to this Court.

According to the evidence, on May 18, 1964, between 8:45 p. m. and 9:00 p. m., three men entered a liquor store at 3301 Brooklyn Avenue in Kansas City, Jackson County, Missouri. Preston D. Marlow, an employee, was working at a counter at the rear of the store. John Joe Giamalva, a co-owner of the store, was working at a counter at the front of the store. One of the men went to the back counter and two of the men went to the front counter. The man at the back counter fired a shot into some bottles and instructed Marlow to open his cash register. Marlow placed some money on the counter and the man picked up the money, fired a second shot, and ran out the front door. Meanwhile, at the front counter, one of the two men who remained in the front of the store pointed a .32 automatic pistol at Giamalva and ordered him to open his cash register. Both men reached into the cash register and took money out. The two men went out the door, another shot was fired, and Giamalva was hit in the shoulder. The alarm button was punched, the police arrived, and a police officer found a .32 caliber shell casing on the floor of the store approximately ten feet from the door.

Appellant was arrested on May 19, 1964, at 3:50 p. m. at the marriage license bureau in the Jackson County Court House, and at 4:30 p. m. on said date was identified in person in a police "lineup" by Giamalva as one of the men who participated in the robbery.

At the trial, Giamalva identified appellant in the courtroom as one of the three men who entered the store. Giamalva stated that appellant was the man at his counter who did not have a gun and that appellant was right in front of Giamalva, about three feet away from him. He observed appellant at the robbery for a period of a minute and a half to two minutes.

Approximately $786 was taken in the robbery.

Appellant admitted the two prior convictions pleaded in the amended information.

Norval Joseph Helms testified he was a disc jockey at Little Caesar's Lounge (which is located four blocks from the liquor store) and observed appellant at the lounge on May 18, 1964, from 7:00 or 7:30 p. m. until 9:00 or 9:30 p. m. John Williams, the manager of Little Caesar's Lounge, testified that he noticed appellant at the lounge between 8 o'clock and 9 o'clock the evening of May 18, 1964, when he went to quell a commotion and appellant was there. He spent ten or fifteen minutes quelling the disturbance. Freda Vermont, a barmaid at Little Caesar's, testified she went to work at 7:00 p. m. on May 18, 1964, and appellant came in right behind her. She testified she observed appellant at Little Caesar's for three or four hours and saw him around 9:00 p. m. She thought appellant left arount 10:00 p. m. Barbara Reed testified that she saw appellant downstairs at Little Caesar's the evening of May 18, 1964, about 7:00 p. m. and that appellant stayed down there two or three hours. She testified that he was there at 9:00 p. m. Rosemary Jackson testified that she saw appellant at Little Caesar's about 6:30 p. m., May 18, 1964, and several times between 6:30 and 11 o'clock. Dorothy Walker, a barmaid, testified that she saw appellant at Little Caesar's at 9:00 p. m.,

May 18, 1964. Ora Lee Watson, wife of appellant, testified appellant picked her up from work in front of the Post Office about 10:30 p. m., May 18, 1964, and she noticed nothing unusual about his appearance.

On October 29, 1964, the case went to the jury and a verdict of guilty of Robbery, First Degree was returned. On said date, appellant was given thirty days in which to file a motion for new trial and a presentence investigation by the State Parole Board was ordered by the trial court. On November 27, 1964, a motion for new trial was overruled and it was ordered by the trial court that sentencing be deferred, pending receipt of presentence investigation from the State Parole Board. On March 5, 1965, appellant appeared before the trial court in person and with his attorney, and his punishment was assessed at ten years in the custody of the Department of Corrections.

Appellant first alleges that the trial court erred in failing to indicate the sentence to be imposed prior to the expiration of the time for filing of appellant's motion for new trial, and, therefore, deprived appellant of the opportunity to raise the questions of validity or excessiveness of the sentence in his motion for new trial. Appellant quotes from State v. Grant, Mo.Sup., 380 S.W.2d 799, at page 802, as follows: "The determination of the punishment must be made *after the conviction* and should be made before the motion for a new trial is prepared and filed in order to give defendant's counsel an opportunity to assign error with respect thereto in the motion. It was therefore in order for the court to determine the punishment after the jury had returned its verdict and been discharged."

 This statement relied on from the Grant case was made in connection with the determination of "the nature and legal effect of what occurred immediately after the verdict was returned and the jury discharged," 380 S.W.2d 801. At that time

the court called on counsel to state their views as to what the punishment should be, then required the defendant to stand and stated that it "will be the judgment" of the court that the defendant be sentenced to a stated term of imprisonment. This opinion holds the legal effect of this episode was to assess or determine the punishment under the Habitual Criminal Act and was not a formal judgment and pronouncement of sentence. The Grant case holds that it was proper to indicate to the parties at that time what the punishment would be, but it does not hold it would be prejudicial error to fail to do so before the motion for new trial was filed. In the Grant case a presentence investigation was not ordered under Rule 27.07(b), V.A.M.R., as was done in the instant case. Further, at page 803 of the opinion in the Grant case, it was expressly held that a judgment imposing sentence prior to the filing of a motion for new trial would be illegal and ineffective, citing State v. Withers, Mo. Sup., 347 S.W.2d 146, 148. If presentence investigation is not ordered, the trial judge may, after conviction and before the filing of the motion for new trial, indicate the punishment he intends to assess. However, this indication by the trial court does not constitute the judgment. Rule 27.20, V.A. M.R., and § 547.030 RSMo 1959, V.A. M.S., require that the motion for new trial shall be filed before judgment. When a motion for new trial is filed and presentence investigation ordered, they must be considered and ruled upon prior to judgment when sentence is imposed by the court. State v. Jaeger, Mo.Sup., 394 S.W.2d 347, 354. Appellant cites State v. Rizor, 353 Mo. 368, 182 S.W.2d 525, for the proposition that relief for excessive punishment is sought in a motion for new trial and is a cognizable question on appeal if there is evidence of passion and prejudice. The Rizor case does not assist appellant. It was decided long before the amendment in 1959 of the Habitual Criminal Act (§ 556.280 RSMo 1959), applicable here, which requires that punishment shall be deter-

132

mined by the trial court and not by the jury.

How then may a defendant in a case brought under the Habitual Criminal Act raise the question of validity or excessiveness of sentence in his motion for new trial when judgment must be entered subsequent to disposition of his motion for new trial? The answer is that he cannot. However, he is not without remedy. These questions are reviewed on appeal under Rule 28.02, V.A.M.R. State v. Hurtt, Mo. Sup., 338 S.W.2d 876; State v. Kiddoo, Mo. Sup., 354 S.W.2d 883. Of course, in a case where the Habitual Criminal Act is not invoked, and the jury assesses the punishment (as in the Rizor case, supra), a defendant would be well advised to raise the question of excessiveness of punishment in his motion for new trial. See Rules 27.04 and 27.06, V.A.M.R., and §§ 546.430 and 546.460 RSMo 1959, V.A.M.S.

We have reviewed the matters relating to judgment and sentence and they are in all respects proper. Appellant's punishment was assessed at ten years in the custody of the Department of Corrections and is not excessive. State v. Politte, Mo.Sup., 249 S.W.2d 366; §§ 560.120 and 560.135 RSMo 1959, V.A.M.S. and § 556.280 RSMo 1959, V.A.M.S. (as amended Laws 1959, S.B.No.117).

Appellant next alleges that the trial court abused its discretion in failing to grant appellant a new trial because of newly discovered evidence. This evidence consisted of a question and answer statement taken November 24, 1964, by a court reporter from one Andrew McKelvy, while incarcerated in the Jackson County Jail. McKelvy stated therein that he, McKelvy, was present at "a robbery that occurred sometime ago at 33rd and Brooklyn," and that appellant, Robert Watson, "didn't take part in it."

A new trial may be granted for newly discovered evidence. Section 547.020 RS Mo 1959, V.A.M.S.; Rule 27.19, V.A.M.R.

In State v. Green, Mo.Sup., 305 S.W.2d 863, at page 873, the Court stated: "The next point argued and briefed is that the court erred in refusing to grant a new trial on the ground of newly discovered evidence. The trial court is vested therein with much discretion in deciding among other things: (a) whether the evidence newly discovered is so material that it would probably produce a different result; (b) whether the failure to produce it at the trial was due to a want of diligence; and (c) whether it is merely cumulative. State v. Jones, Mo., 221 S.W.2d 137; State v. Sherry, Mo., 64 S.W.2d 238; State v. Vinson, Mo., 107 S.W.2d 16; State v. Thomas, Mo., 82 S.W.2d 885; State v. Brown, Mo., 245 S.W.2d 866. As is the rule in similar matters, an abuse of this discretion should appear in order to justify a reversal. And the courts do not favor the granting of new trials on this ground. Gromowsky v. Ingersol, Mo.App., 241 S.W. 2d 60; State v. Bybee, 149 Mo. 632, 51 S.W. 470."

McKelvy's statement was attached to appellant's motion for new trial, was considered by the trial court, and appellant's motion for new trial was overruled. Did the trial court in so doing abuse its discretion? We think not. A review of McKelvy's statement is in order. McKelvy stated the robbery took place about six in the evening. It took place between 8:45 and 9:00 p. m. He stated a liquor store was robbed. He was accurate in this respect. McKelvy did not know the corner or the intersection on which the liquor store was located. He did not recall the weather conditions at the time of the robbery. He did not remember how he was dressed at the time. He thought the robbery occurred around the first of June, 1964. It occurred May 18, 1964. He did not recall how many people were in the store nor the amount of money taken. He stated the robbery was conducted at gun point. He was accurate in this respect. He stated there were shots fired but did not know who fired the shots. He did not know whether

anyone was hit nor whether a scuffle ensued during the course of the robbery. He stated that appellant was not present at the time of the robbery. It is implied throughout the statement that McKelvy committed the robbery. However, he never expressly admitted his participation.

We are of the opinion that the trial court did not abuse its discretion in failing to grant appellant a new trial. The trial court considered the newly discovered evidence and found the facts against appellant. We hold that such action was within the discretion of the trial court and there was no abuse of discretion in this case. State v. Waters, 144 Mo. 341, 347, 348, 46 S.W. 173, 175; United States v. Johnson, 327 U.S. 106, 66 S.Ct. 464, 90 L.Ed. 562; Jones v. United States, 4th Cir., 279 F.2d 433; Jeffries v. United States, 9th Cir., 215 F.2d 225, 15 Alaska 83; Connelly v. United States, 8th Cir., 271 F.2d 333; Underhill's Criminal Evidence 5th Edition, § 430.

■ We have heretofore reviewed the matters of sentence and assessment of punishment under Rule 28.02, V.A.M.R. The amended information was sufficient and proper. Section 560.120 RSMo 1959, V.A.M.S., and § 556.280 RSMo 1959 (as amended Laws 1959, S.B.No.117); State v. Foster, Mo.Sup., 249 S.W.2d 371, 372, 373; State v. Brewer, Mo.Sup., 338 S.W.2d 863, 867. The verdict is sufficient. It is responsive to the charge made in the amended information and certain as to the offense intended. State v. Kennebrew, Mo.Sup., 380 S.W.2d 293, 295. It did not assess punishment nor did it find the prior convictions. However, these duties, since the effective date of the amended Habitual Criminal Act, § 556.280 (Laws Mo.1959, S.B.No.117), were properly performed by the trial judge. State v. Maxwell, Mo.Sup., 376 S.W.2d 170, 174, 175; State v. McWilliams, Mo.Sup., 370 S.W.2d 336, 338, 339; State v. West, Mo. Sup., 356 S.W.2d 880, 882.

The judgment is affirmed.

All concur.